THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| BUYPD, LLC, and PROPERTY DIRECT, LLC,<br><br>        **Plaintiffs,**<br><br>v.<br><br>CARNEY LOOK-WONG,<br><br>        **Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:24-cv-00715-HCN-JCB**<br><br>**District Judge Howard C. Nielson, Jr.**<br><br>**Magistrate Judge Jared C. Bennett** |

### INTRODUCTION[1]

Before the court is Defendant Carney Look-Wong's ("Ms. Look-Wong") motion to stay proceedings pending the resolution of an underlying case, *Wilson v. BuyPD, LLC*, 2:20-cv-00558-DBB-CMR ("*Wilson*").[2] For the reasons stated below, the court grants the motion because a stay is appropriate until the proceedings in *Wilson* are resolved.

### BACKGROUND

The parties in this case are all parties in *Wilson*, though their positions are reversed. Ms. Look-Wong is the defendant here and a plaintiff in *Wilson*; the plaintiffs in this action (i.e., BuyPD, LLC ("BuyPD") and Property Direct, LLC ("Property Direct," collectively referred to as

---

[1] District Judge Howard C. Nielson, Jr., referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A). ECF No. 6.

[2] ECF No. 37.

"Plaintiffs")), are defendants in *Wilson*. The court begins by briefly recounting the factual background before turning to the procedural history.

## I.    Factual background

The plaintiffs in *Wilson*, including Ms. Look-Wong, allege that Plaintiffs and others engaged in a wide-ranging fraud involving deceptive transactions.[3] As pertinent here, the scheme allegedly involved an entity called Invictus Law breaching its fiduciary duty to its clients by failing to disclose that it simultaneously represented *Wilson* plaintiffs and *Wilson* defendants during real estate transactions.[4] Invictus Law allegedly "fraudulently induc[ed] the [*Wilson*] Plaintiffs to enter into release agreements related to the foregoing real estate transactions without [the *Wilson*] Plaintiffs' knowledge, and advis[ed] [the *Wilson*] Plaintiffs to sign without counseling them regarding the ramifications of such clauses."[5]

Ms. Look-Wong alleges that she entered into one of these release agreements,[6] which Plaintiffs are attempting to enforce in this action.[7] Attached to Plaintiffs' complaint is a release agreement between Ms. Look-Wong and a "Company" defined as "Property Direct, its subsidiaries, affiliates, successors, assigns, and related entities" ("Settlement Agreement").[8] The Settlement Agreement required Ms. Look-Wong to provide a full release of claims and to waive

---

[3] *Wilson,* 2:20-cv-00558-DBB-CMR, ECF No. 177 at 3.

[4] *Id*. at 132-33.

[5] *Id*. at 133.

[6] ECF No. 37 at 3.

[7] ECF No. 2-2 at ¶ 56.

[8] *Id*. at 8-9.

any claims she had or would have against the Company.[9] Plaintiffs allege that Ms. Look-Wong breached the Settlement Agreement by filing a lawsuit against them.[10] Ms. Look-Wong states that she hired Invictus Law, which encouraged her to enter into the Settlement Agreement without informing her of the consequences of doing so.[11] Ms. Look-Wong argues that this, coupled with the dual-representation allegations outlined above, shows that she was fraudulently induced into entering the Settlement Agreement.[12] Additionally, Ms. Look-Wong claims that Plaintiffs' breach of contract claim in this case is moot if the court determines the Settlement Agreement is part of an illegal scheme, a determination that is also central in *Wilson*.[13]

## II.    Procedural history

This action has been intertwined with *Wilson* since shortly after this case was removed to federal court. In November 2024, this court granted the parties' stipulated motion to stay the proceedings pending the resolution of a motion in *Wilson*.[14] The court lifted the stay in February 2025.[15] The *Wilson* plaintiffs moved to consolidate the two actions,[16] and in June 2025 this court granted Ms. Look-Wong's motion to stay this case pending the ruling on the motion to consolidate.[17] In December 2025, Judge Barlow denied the motion to consolidate because it was

---

[9] ECF No. 2-2 at 8-9, ¶ 28.

[10] *Id.* at ¶¶ 40-43.

[11] ECF No. 37 at 3.

[12] *Id.*

[13] *Id.* at 3-4.

[14] ECF No. 12.

[15] ECF No. 15.

[16] *Wilson,* 2:20-cv-00558-DBB-CMR, ECF No. 217.

[17] ECF No. 31.

not actionable while *Wilson* was stayed pending appeal.[18] In April 2026, the court lifted the stay in this case,[19] and two weeks later Ms. Look-Wong filed the instant motion seeking to stay this case until *Wilson* is resolved.[20]

## LEGAL STANDARD

On the one hand, Ms. Look-Wong urges the court to evaluate the motion to stay using the "inherent power standard," which requires courts to evaluate the following three factors: "'(1) whether a stay would promote judicial economy; (2) whether a stay would avoid confusion and inconsistent results; and (3) whether a stay would unduly prejudice the parties or create undue hardship.'"[21] On the other hand, Plaintiffs rely on *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*[22] to argue that Ms. Look-Wong, as the party seeking the stay, "'must make a strong showing of necessity'"[23] and "must demonstrate a clear case of hardship or inequity."[24] As the court explains below, regardless of which standard the court applies, a stay is warranted.

---

[18] *Wilson,* 2:20-cv-00558-DBB-CMR, ECF No. 307.

[19] ECF No. 35.

[20] ECF No. 37.

[21] *Id*. at 2 (quoting *Jensen v. Utah Cnty.*, No. 2:24-CV-00887-JNP-CMR, 2025 WL 3496597, at *2 (D. Utah Dec. 5, 2025)).

[22] 713 F.2d 1477 (10th Cir. 1983).

[23] ECF No. 38 at 2 (quoting *Chilcott*, 713 F.2d at 1484).

[24] *Id*. (quoting *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000)).

### ANALYSIS

Under either Plaintiffs' or Ms. Look-Wong's requested standard, a stay is warranted. Taking Plaintiffs' standard first, Ms. Look-Wong is able to demonstrate the required "clear case of hardship or inequity" to be awarded a stay.[25] If this court denies the requested stay, Ms. Look-Wong would be forced to litigate this entire case, and if the agreement is later found to be invalid in *Wilson*, that outlay of money, time, and effort would have been for naught – to say nothing of the hardship she will face if the agreement is enforced but later declared invalid. There is also the very real possibility that a denied stay would require Ms. Look-Wong to duplicate her litigation efforts by arguing nearly identical claims on two fronts when the disposition of one action would obviate the need for the other. This clear case of hardship and inequity supports a stay.

The same result occurs if the court instead applies the "inherent power" standard. The court has explained how judicial economy favors a stay: A conclusion in *Wilson* that the release agreement is unenforceable would obviate, rather than merely delay, the need for this litigation. Second, the potential for inconsistency that arises if this court and the *Wilson* court come to different conclusions about the enforceability of the Settlement Agreement supports staying this action. Lastly, the imposition of a stay – unlike the denial of a stay – would not unduly prejudice the parties or create undue hardship. Plaintiffs claim a stay would cause them prejudice by delaying the timely adjudication of their rights under the Settlement Agreement.[26] They also state they have identified a narrowed path for discovery that would avoid prejudicing Ms. Look-Wong

---

[25] *Ben Ezra*, 206 F.3d at 987. *See also Chilcott*, 713 F.2d at 1484 (quoting *Landis v. North American Co.,* 299 U.S. 248, 255 (1936)).

[26] ECF No. 38 at 5.

if the case proceeds.[27] Ms. Look-Wong argues that declining to stay the case would cause her to incur duplicative litigation costs and force her to "essentially creat[e] a clone of [*Wilson*]" to prove the Settlement Agreement is unconscionable and therefore unenforceable.[28]

Just as in the "clear case of hardship or inequity" evaluation, Ms. Look-Wong has the better of the argument here. Plaintiffs will have to defend against the *Wilson* plaintiffs' claims regardless of the outcome here. If this court finds the Settlement Agreement enforceable, then Plaintiffs will possibly have one less adversary with which to contend in *Wilson*, and that could reduce Plaintiffs' *Wilson* litigation costs. But that avoided cost pales in comparison to the cost of litigating this entire case if it is not stayed.

Nevertheless, Plaintiffs rely on *Chilcott* for the proposition that a stay is inappropriate. *Chilcott* concerned a court-appointed Receiver's efforts to obtain funds for the victims of a Ponzi scheme.[29] While the Receiver pursued claims on behalf of the entire pool of defrauded investors, the district court stayed several cases that arose between various victims of the scheme.[30] The Court of Appeals for the Tenth Circuit held that the district court's stay of those cases was an abuse of discretion.[31] There were two inquiries the *Chilcott* court pursued in evaluating the stay that are especially applicable here: (1) whether resolving the issues in the Receiver's case would

---

[27] *Id.*

[28] ECF No. 40 at 8; ECF No. 37 at 5-6.

[29] *Chilcott*, 713 F.2d at 1479-81.

[30] *Id.* at 1480-81. These investors were prosecuting claims that other investors had, for example, fraudulently induced investment into the Ponzi scheme. *Id.* at 1481.

[31] *Id.* at 1487.

obviate the need to resolve issues in the investors' cases; and (2) whether the resolution of investor cases would have a preclusive effect on the Receiver's case.

The first goes to the consideration of judicial economy. The *Chilcott* court reasoned that the stayed suits between defrauded investors were "merely being delayed, but not obviated" and therefore "the conservation of judicial efforts by delaying the investors' suits will likely be negligible."[32] Here, the opposite is true. If the release agreements are determined to be invalid in *Wilson*, then there is nothing to enforce in this case. Only if the contracts are found valid in *Wilson* can this case go forward.

The second inquiry concerns the preclusive effect of one lawsuit upon the other. In *Chilcott*, the Tenth Circuit noted that since "issue preclusion could apply only against parties or their privies[,] . . . [a] judgment on the merits in one investor action would have no collateral estoppel effect on any investor (or the Receiver) who was not a party to that action."[33] In this action, however, all of the parties are also parties to the underlying action, and there is no similar bar to the potential application of collateral estoppel.

Although Plaintiffs rely on *Chilcott*, these major pillars of the *Chilcott* court's reasoning do not support Plaintiffs' position. *Chilcott* dealt with unusual circumstances, while this case is closer to what the *Chilcott* court described as the "usual circumstances in which the same parties and issues are involved in separate actions . . . ."[34] There are extra issues in *Wilson*, to be sure, but the main issue of this case is also the subject of that litigation and will have a preclusive

---

[32] *Chilcott*, 713 F.2d at 1485.

[33] *Id*. at 1486.

[34] *Id*. at 1483 (citing *Landis v. North American Co.,* 299 U.S. 248, 254 (1936)).

effect in this action one way or another. Because Ms. Look-Wong can demonstrate a "clear case of hardship or inequity"[35] and satisfy the "inherent power" standard,[36] a stay is warranted.

**ORDER**

For the reasons stated above, the court HEREBY ORDERS that Ms. Look-Wong's motion to stay[37] is GRANTED, and this case is STAYED pending the resolution of *Wilson*.

IT IS SO ORDERED.

DATED this 4th day of June 2026.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge

---

[35] *Ben Ezra*, 206 F.3d at 987.

[36] *Jensen*, No. 2:24-CV-00887-JNP-CMR, 2025 WL 3496597, at *2.

[37] ECF No. 37.